SIDNEY MALLER AND DORIS MALLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Maller v. Commissioner
Docket No. 23611-81.
United States Tax Court
T.C. Memo 1984-614; 1984 Tax Ct. Memo LEXIS 64; 49 T.C.M. (CCH) 157; T.C.M. (RIA) 84614; November 21, 1984. Sidney Maller, pro se. Rona Klein, for the respondent. WILES MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in, and addition to, petitioners' Federal income taxes: Addition to tax
Year
Deficiency
Sec. 6651(a)(1) [1]
1977
$4,664
1978
3,241
$837.93
After concessions by respondent, the remaining issues are: (1) Whether disability retirement pay received by petitioner Sidney Maller in 1977 and 1978 was excludible from petitioners' gross income; and (2) whether petitioners' failure to timely file their 1978 return was due to reasonable cause. [2]
*66 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Sidney Maller (hereinafter petitioner) and Doris Maller, [3] husband and wife, were residents of Douglaston, New York, at the time they filed their petition in this case. Petitioners timely filed their joint 1977 Federal income tax return with the Brookhaven Internal Revenue Service Center. Their joint 1978 return, due April 15, 1979, was received by respondent on August 30, 1979. Petitioners did not request an extension of time to file their 1978 joint income tax return, although petitioner was aware of the procedure for requesting an extension. Prior to his disability retirement in 1976, petitioner worked for the government in excess of 30 years, including 4 years of military service and 27 years with respondent's Manhattan district office. On August 5, 1976, it was determined that petitioner *67 had a brain tumor. The presence of the tumor caused pressure on and deterioration of petitioner's optic nerve, resulting in the loss of substantially all of the vision in petitioner's left eye. The onset of petitioner's disease made it impossible for him to continue his duties as a revenue agent. He therefore applied for disability retirement under the provisions of the Civil Service Retirement Act, 5 U.S.C. Sec. 8331 et seq. (1982). To support his claim for disability retirement, petitioner submitted the reports of three doctors who verified the loss of his vision, the origins of the malady, and that his condition was incurable. Effective October 19, 1976, petitioner was granted a disability retirement, the benefits of which he arranged to receive in the form of annuity payments with a survivor benefit. The documents submitted to petitioner by the United States Civil Service Commission, along with his Forms W-2P(A) for the years in issue, clearly state that petitioner's annuity payments resulted from disability retirement. However, the sums he received were not computed with reference to the nature of his injury. Under the rules of the United *68 States Civil Service Commission, petitioner was eligible for voluntary retirement in 1976 because he was over age 55 and had more than 30 years of service. In addition, petitioner was eligible to retire on grounds of disability because he was found to be totally disabled for useful and efficient service in the grade and position he held. The benefits under both voluntary retirement and disability retirement are computed in the same manner based solely upon the retiree's compensation and length of service. In short, petitioner was free to retire for any reason after age 55 without any effect on the amount of his benefits. Petitioner received disability retirement payments of $13,227.73 in 1977 and $14,214 in 1978. Petitioners excluded these amounts from their gross income in computing their tax liability in those years. During 1977 and 1978, petitioner was employed by the City of New York to teach at Kingsboro Community College. Also in 1977, he was hired to teach at Manhattan Community College. Petitioner received wages of $13,761.76 for his teaching activities in 1977, and $3,904.56 in 1978. Declaring this latter figure as their only major source of income in 1978,petitioners *69 claimed an earned income credit of $383.90 in that year. OPINION The first issue for decision is whether disability retirement pay is excludable from petitioners' gross income. Petitioner claims that because he received a disability retirement, his benefits should be excluded from income under section 105(c). Respondent contends that none of the provisions of section 105 allow for an exclusion from gross income of any of petitioner's disability payments. We hold for respondent on this issue. In general, subsection 105(a) includes in gross income amounts received by an employee under accident and health plans funded by the employer. Subsections (c) and (d) provide exceptions to that rule for qualifying payments received for permanent loss of a body function or for total disability. The parties agree that petitioner's disability is of the type described in section 105(c)(1). [4] They disagree, however, whether petitioner's payments meet the two requirements of section 105(c)(2) which require that the payments be (1) "computed with reference to the nature of the injury" and (2) "without regard to the period the employee is absent from work." *70 Petitioner clearly fails to meet either test. Because he was over 55 years old when he retired, petitioner's payments are computed only with reference to his compensation level and length of service. The payments are not computed with reference to the nature of the injury. Hines v. Commissioner,72 T.C. 715, 720 (1979). See Caplin v. United States,718 F.2d 544, 549 (2d Cir. 1983). Similarly, petitioner fails to meet the second requirement of section 105(c)(2). Because his retirement benefits started only when he permanently stopped working, it cannot be said the payments were computed without reference to the period he was "absent" from work. See Laverty v. Commissioner,61 T.C. 160, 166-168 (1973), affd. per curiam 523 F.2d 479 (9th Cir. 1975); sec. 1.105-3 and sec. 1.105-4(a)(5), Income Tax Regs.
Petitioner claims that because his benefits were disability benefits, they are necessarily computed with reference to his injury and therefore are excludable. Because his wages as a revenue agent would have exceeded the amount of his retirement benefits, plus the fact that he was losing the chance to remain active, *71 he contends he would not have retired at age 57 were it not for the injury. Albeit that petitioner may be correct that he would not have retired except for his physical disability, his argument is not well-founded. As we stated in Hines v. Commissioner,supra:
We think that the overall scheme of section 105(c) is aimed at providing tax relief to persons who suffer serious, permanent physical injury and receive compensation because of it. The fact that a person may have also lost wages or suffered a diminution of earning capacity because of the injury is irrelevant. To deal with those concerns, Congress enacted section 105(d) which then provided a limited exclusion for amounts received while an employee was absent from work on account of personal injuries or sickness. Section 105(c), however, states specifically that it does not apply to payments determined with reference to the period an employee is absent from work. [72 T.C. at 720, emphasis supplied, fn. ref. omitted]. Petitioner also fails to meet the requirements of section 105(d) [since repealed] and, therefore, may not exclude the disability retirement payments under *72 that section. Although the Civil Service Retirement Commission considered petitioner as totally disabled under its rules, he clearly was not eligible for that classification for tax purposes because he was engaged in substantial gainful employment as a teacher in 1977. Sec. 105(d)(1)(B) and (d)(4). Since, we conclude petitioner cannot exclude his retirement benefits from gross income under section 105(c) or (d), petitioners are not entitled to claim an earned income credit in 1978 because their adjusted gross income in 1978 exceeded that allowed by statute. The last issue is whether petitioners are liable for the section 6651(a)(1) addition to tax for petitioners' failure to timely file their 1978 return. Petitioners bear the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners admit they did not file on time, but claim that their failure was due to reasonable cause. Petitioner contends that because of the anxiety caused by his brain tumor and of the necessity for business related travel, among other reasons, his and his spouse's failure to file was reasonable. We do not agree. We do not minimize the seriousness of petitioner's injury, *73 nor the unpleasant period of uncertainty about his future which must have followed the initial shock. But we do not think that such shock was reasonable cause not to file a tax return that was due over two and one half years after petitioner's condition was diagnosed. [5] We think petitioners' myriad other excuses, which include the death of their dog and dental appointments, are flimsy, especially in light of the fact that petitioner Sidney Maller was well aware that he could obtain an automatic extension merely by filing the necessary form. We therefore hold for respondent on this issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
2. A derivative issue, which will be determined by our resolution of the first issue, is whether petitioners are entitled to an earned income credit for 1978.↩
3. In their reply brief, petitioners for the first time assert that Doris Maller is an innocent spouse. See Sec. 6013(e). Although we question the relevancy of the assertion, we make no determination regarding that issue. Markwardt v. Commissioner,64 T.C. 989, 997↩ (1975).
4. Section 105(c) provides that: (c) Payments Unrelated to Absence from Work.--Gross income does not include amounts referred to in subsection (a) to the extent such amounts-- (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.↩
5. If the reaction to learning of the presence of the disease interfered with their timely filing of the 1978 return, petitioners do not explain why they were able to timely file for 1977.↩