RANDALL L. BEISLER and JUDITH K. BEISLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beisler v. Commissioner
Docket No. 986-83.
United States Tax Court
T.C. Memo 1985-25; 1985 Tax Ct. Memo LEXIS 610; 49 T.C.M. (CCH) 534; T.C.M. (RIA) 85025; 6 Employee Benefits Cas. (BNA) 1260; January 14, 1985. Randall L. Beisler and Judith K. Beisler, pro se. Thomas G. Schleier and M. Catherine McKenna for the respondent. JACOBS MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge*: Respondent determined a deficiency in petitioners' Federal income tax for the year 1979 in the amount of $9,291.18 and an addition to tax of $478.06 under section 6653(a)[1]. After concession, the sole issue for decision is whether the amount of a disability benefit received by Randall L. Beisler in 1979 due to an injury he sustained while playing in a National Football League football game constitutes income for Federal tax purposes. FINDINGS OF FACT The facts have been fully stipulated and are so found. The stipulation of facts and exhibits attached *612 thereto are incorporated by this reference. At the time of filing the petition herein, petitioners Randall L. and Judith K. Beisler, husband and wife, resided in Woodside, California. Randall L. Beisler (hereinafter referred to as "Randall") played professional football for the Kansas City Chiefs in 1975. During the 1975 football season, in a game against the San Francisco Forty-Niners, Randall sustained a career ending injury which, according to a physician's report, caused him to lose the use of his neck, to the extent of 60% to 79%, as well as loss of the use of his left wrist, to the extent of 30% to 49%. The examining physician opined that it was unlikely that Randall could return to professional football and that he should not engage in any occupation requiring strenuous labor. Because of this injury, Randall applied for a "line of duty disability benefit" under the Bert Bell NFL Player Retirement Plan (the NFL plan). Randall's application was approved; and in March, 1979, he received a check in the amount of $34,020 representing 36 monthly benefits (from April 1, 1976, through March 31, 1979) of $945 each. He continued to receive additional monthly disability *613 payments under the NFL plan for the remaining nine months of 1979. [2]
Under the NFL Plan, as in effect in 1979, a player was entitled to receive a monthly line-of-duty disability benefit if he incurred "a substantial disablement" arising out of any preseason, regular or postseason game or any required or directed football activity, as defined under the NFL Plan. Payment of the disability benefit was to last for up to 60 months from the later of (a) the last day of the month following the date of disablement or (b) the first day of the Plan Year (April 1) following the date of disablement. The NFL Plan defined "a substantial disablement" as a permanent disability resulting in a significant (as defined) loss of various bodily functions. [3] A disability is deemed permanent if the disability persists for at least *614 12 months from the date of occurrence and if the disability results in the player's retirement from professional football. A line-of-duty disability benefit is defined as an amount equal to 100% of a player's Benefit Credit. A Benefit Credit is a specific amount which a player earns for each credited football season. For each such season from 1966 through 1975, a player earned from $65 to $110 of Benefit Credits. [4] The only quantitative limit on these monthly benefits is an offset for payments received by the player from workmen's compensation for the *615 same injury. Thus, the amount of the disability payment is not gauged by the nature of the injury sustained but rather by the professional football seasons in which the disabled player participated. The criteria for payment is that the injury persist for at least 12 months and result in the player's retirement from professional football. Contributions to the NFL Plan are made entirely by the member clubs of the NFL, including the Kansas City Chiefs. Randall received no workmen's compensation from his employer or from any state fund. [5]
On petitioners' joint Federal income tax return for 1979 they reported $10,552 (of the $47,475 received) as pension income from the NFL Plan. Respondent *616 determined that the entire $47,475 received by petitioner in 1979 from the NFL Plan is includible in petitioners' income. The parties made concessions regarding all other items set forth in the statutory notice of deficiency. OPINION Randall, a professional football player, received disability benefits in 1979 for an injury he sustained during a football game in 1975. Petitioners contend that these amounts are not includible in income, alternatively because (1) the payment is essentially equivalent to workmen's compensation (104(a)(1)) [6] or (2) the payment was received through an accident plan for personal injuries (105(c)) [7]. *617 Exclusion from income under section 104(a)(1)
Section 104(a)(1) provides that gross income does not include amounts received under workmen's compensation acts as compensation for personal injuries. Amounts received under a statute in the nature of a workmen's compensation act are similarly excludable. Section 1.104-1(b), Income Tax Regs.
The disability benefits paid to Randall were provided under a private contractual agreement between the players and an association representing their employers. The payments were not received under a workmen's compensation act or a under statute in the nature of workmen's compensation. In American Foundry v. Commissioner,59 T.C. 231 (1972), affd. in part and revd. in part as to other issues 536 F.2d 289 (9th Cir. 1976), we held that the amount of continued salary payments by a corporation to its disabled ex-president was includible in the recipient's income since such payments were not required by any state or local statute. We found the payments were made under a private *618 arrangement, as were those in the instant case, and not under a workmen's compensation act or a statute of a similar nature. See also Rev. Rul. 83-77, 1983-1 C.B. 37. Petitioners cite Rev. Rul. 83-91, 1983-1 C.B. 38, to support their contention that the disability benefits received under the NFL Plan were received under a statute of a nature similar to workmen's compensation. In that ruling, as in Dyer v. Commissioner,71 T.C. 560 (1979), and in Neill v. Commissioner,17 T.C. 1015 (1951), the disability payments were received pursuant to an administrative regulation or local ordinance governing payments to public employees. Both Rev. Rul. 83-91 and Dyer involved teachers who received compensation for an occupational injury under a governmental directive which had the force of law and thus qualified as a statute in the nature of a workmen's compensation act. Here, Randall's benefits were paid under a private arrangement (rather than under a statute or governmental directive); thus, the benefit was not the kind which is excluded from gross income under section 104(a)(1). Exclusion *619 from income under section 105(c)
Petitioner alternatively rely on section 105(c). Generally, section 105(a) requires that gross income include those amounts received by an employee from accident and health plans to the extent such amounts are attributable to contributions by the employer which are not includible in the employee's income or which are paid by the employer. Under section 105(c), however, a taxpayer may exclude from gross income the amounts otherwise includible by section 105(a) to the extent they: (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * *, and
(2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work. (emphasis added). Unless both paragraphs of section 105(c) are satisfied, the general rule of income inclusion of section 105(a) applies. The disposition of the instant case depends particularly on section 105(c)(2). *620 Section 105(c)(2) requires that the amount of the benefit be calculated with reference to the nature of the particular injury and that the amount not vary according to whether the injured taxpayer retired immediately after the injury, returned to work after some recuperation period or returned to work immediately. See S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 183-184 (1954); 1.105-3, Income Tax Regs. In this case, petitioners are unable to satisfy the condition set forth in section 105(c)(2); therefore, the benefits received by Randall from the NFL Plan are includible in income. The amount of Randall's disability payment was not computed with reference to the nature of the football injury he sustained. The amount of the line-of-duty disability payment under the NFL Plan to all players who sustained career ending injuries and whose professional football careers spanned the same seasons are identical regardless of the nature of the injuries sustained. In Hines v. Commissioner,72 T.C. 715 (1979), which involved disability payments to a commercial pilot who suffered a heart attack, we held that the payments were not excludible *621 under section 105(c)(2) since payments to disabled pilots did "not vary according to the type of injury received and a pilot who has a heart attack is entitled to the same benefits as one who suffers a mental breakdown or loses a limb." 72 T.C. at 720. Furthermore, here, the disability benefit payments are contingent upon Randall's absence from his job. the amount is not calculated simply by virtue of petitioner sustaining an injury. Instead, under the terms of the NFL Plan, the injury must be a substantial disablement, defined as one that results in Randall's retirement from professional football. If Randall had not retired, he would not have received a disability benefit. Thus, the amount of the benefit depends upon Randall's absence from work. See. Rev. Rul. 74-603, 1974-2 C.B. 35. Having decided thusly, we need not consider whether the amount of the benefit constitutes payment for the permanent loss or loss of use of a member of function of the body, or the permanent disfigurement, of the taxpayer. To reiterate our holding, the entire amount of the line-of-duty disability benefits received by Randall in 1979 constitutes income for Federal *622 tax purposes. To reflect the foregoing and the concessions made by the parties prior to submission of this case, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge C. Moxley Featherston to Judge Julian I. Jacobs↩. 1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in 1979.↩
2. The parties stipulated that in 1979 Randall received $47,475 in payments from the NFL Plan and that he reported $10,552 of such amount as income. The $34,020 received in March, 1979, plus the nine monthly payments of $945 each for the remainder of 1979, total $42,525. Based on the record before us, we are unable to resolve the apparent discrepancy.↩
3. Article 6.4 of the NFL Plan provides, in part, as follows: 6.4 A "substantial disablement" is a permanent disability which: A) Results in a partial bodily disability of 50% or more, or the loss of 50% or more of speech or sight; or 50% or more loss of use of the neck or back; or B) Results in 60% or more loss of use of the hearing or an arm, shoulder, leg, or hip; or C) Results in 80% or more loss of the use of a hand, wrist, elbow, foot, ankle, or knee; or D) Is the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system.↩
4. The following table, which is derived from Article 4.1 of the NFL Plan, shows the amount of Benefit Credits accrued by an eligible player for each credited season from 1966 to 1975. ↩
Credited Season
Benefit Credit
1966
$ 65
1967
$ 65
1968
$ 85
1969
$ 85
1970
$100
1971
$105
1972
$110
1973
$110
1974
$110
1975
$110
5. The record does not establish the amount of workmen's compensation to which Randall would have been entitled, if any.↩
6. SEC. 104 COMPENSATION FOR INJURIES OR SICKNESS. (a) IN GENERAL. -- Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include-- (1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness; ↩
7. SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS. -- Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. * * * (c) PAYMENTS UNRELATED TO ABSENCE FROM WORK. -- Gross income does not include amounts referred to in subsection (a) to the extent such amounts -- (1) constitute payment for the permanent loss or loss of use of a member of function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.↩