Kenneth S. ROSEN and Lou Hill
("Johnnye") Davidson, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 84–0074–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Sept. 23, 1986.

Robert E. Stroud, D. French Slaughter,
III, McGuire, Woods & Battle, Charlottes-
ville, Va., for plaintiffs.

Stephen Carlton, Trial Atty., Tax Div.,
Dept. of Justice, Washington, D.C., John
Perry Alderman, U.S. Atty., Roanoke, Va.,
for defendant.

## MEMORANDUM OPINION

MICHAEL, Judge.

Kenneth S. Rosen [hereinafter "taxpay-
er"] and his wife, Lou Hill Davidson,[1]
brought this suit seeking to recover $20,-
755.00 in income taxes paid for the calen-
dar year 1976 and $168,221.00 in income
taxes paid for the calendar year 1977. The
question presented is whether the sums
received by taxpayer upon termination of
his employment due to disability should be
included in gross income. It is the opinion
of this court that such sums should not be
so included.

---

1. Lou Hill Davidson is a party to this suit solely
by virtue of her having filed a joint income tax
return with her husband for the years in dis-
pute.

Taxpayer was employed by Warner Communications, Inc. [hereinafter WCI], pursuant to an employment agreement covering the period beginning January 1, 1977, and ending December 31, 1981. Some time after Rosen commenced working at Warner, he was involved in a horse riding accident in New York, New York. In the ensuing six month period, and continuing thereafter, Rosen was unable to perform any services for WCI and continued to receive compensation under his employment agreement. After his six months' inability to perform, he began receiving payments under section 5 of the employment contract, which payments continued for the duration of the contract.[2] It is undisputed that Rosen's injuries resulted in total and permanent disability. Further, both parties, having moved for summary judgment, agree that the contract at issue is unambiguous in its terms, although the conclusions that each side draws from those terms are contradictory.

In 1977, taxpayer received a total of $282,550.00 in compensation from WCI. In 1978, taxpayer received total compensations from WCI in the amount of $183,-691.44. Taxpayer timely filed claims for refund in each of those taxable years, claiming that such payments were excludable from gross income under section 105 of the Internal Revenue Code, 26 U.S.C. § 105 (1982). The refund claims were denied and this suit was brought.

Under I.R.C. § 105(c), sums received under a company's accident or health plan are not included in the employee's gross income to the extent that they "constitute payment for permanent loss or loss of use of a member or function of the body," and "are computed with reference to the nature of the injury without regard to the period the employee is absent from work." The government contends that the disability provisions of the employment agreement do not satisfy the elements of the statute because (A) the agreement did not require any *permanent* loss of a member or func-

2. Under section 5 of the contract, compensation was to be paid to the employee under the following conditions:

I. If during the term of full time employment the Executive shall become physically or mentally disabled, whether totally or partially, so that he is prevented from performing his usual duties for a period of six consecutive months, or for shorter periods aggregating six months in any twelve-month period, WCI shall, nevertheless, continue to pay the Executive his full compensation and continue to credit the Account, when otherwise due, as provided in Section 3, through the last day of the sixth consecutive month of disability or the date on which the shorter periods of disability shall have equalled a total of six months in any twelve-month period. WCI may at any time on or after such day, by written notice to the Executive (the "Disability Notice"), provided the Executive has not resumed his usual duties prior to the date of the Disability Notice, reduce the Executive's Current Compensation for the balance of the term of full time employment.... If, during the term of full time employment and subsequent to the date of the Disability Notice, the Executive shall fully recover from a disability, WCI shall have the right (exercisable within sixty (60) days after notice from the Executive of such recovery) but not the obligation to restore the Executive to full time service at full compensation. If WCI elects not to re-

store the Executive to full time service, he shall be entitled to obtain other employment, subject however to (i) an obligation to perform advisory services during the advisory period as provided herein and to perform corresponding advisory services during any balance of the term of full time employment, and (ii) the continued application of the covenants provided in Sections 10 or 11. Any income from such other employment shall not be applied to reduce WCI's obligations hereunder. Neither the term of this Agreement nor the term of full time employment shall be extended or be deemed suspended by reason of any period of disability. WCI shall be entitled to deduct from all payments to be made to the Executive during any disability period (whether or not there has been a reduction in the Executive's Current Compensation pursuant to this Section 5) an amount equal to all disability payments received by the Executive (but only with respect to that portion of the disability period occurring during the term of full time employment) from Workmen's Compensation, Social Security and disability insurance policies maintained by WCI; provided, however, that for so long as and to the extent that proceeds to the Executive from such disability insurance policies are not includible in his income Federal income tax purposes, WCI's deduction with respect to such payments shall be twice their amount.

tion of the body in order to qualify for compensation, (B) there was no disability-specific sliding scale schedule of payments that would indicate that payments would be calculated with reference to the nature of the injury, and (C) the payments were not made without regard to Rosen's absence from work because disability compensation would not be available until Rosen had been unable to perform for a cumulative period of six months in any twelve month period.

This section of the Code must be contrasted with section 105(d) which excludes from gross income amounts received under employer accident or health insurance plans if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of permanent and total disability, in the case of taxpayers who are under age 65 and have retired on disability. The excludible amounts are severely limited to those not exceeding a weekly rate of $100 and for taxpayers whose gross income for the taxable year does not exceed $20,-200. Obviously Rosen's level of income bars him from excluding any portion of his income—including the first $100—because his income for the years in question is much in excess of the gross income limitation.

Thus, for the payments from WCI to be excludible from Rosen's gross income, it must be determined that they satisfy the requirements of section 105(c) of the Code. This court recognizes, of course, that "tax exemptions are matters of legislative grace, which must, accordingly, be strictly construed against the taxpayer." *United States v. Community Services, Inc. Corp.,* 189 F.2d 421, 425 (4th Cir.1951), *citing Helvering v. Ohio Leather Co.,* 317 U.S. 102, 63 S.Ct. 103, 87 L.Ed. 113 (1942); *Helvering v. Northwest Steel Rolling Mills,* 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29 (1940); *Cornell v. Coyne,* 192 U.S. 418, 24 S.Ct. 383, 48 L.Ed. 504 (1904). The government argues that payments by WCI to Rosen do not meet the conditions of section 105(c), under each of its three prongs. For

clarity each condition will be addressed separately.

### A. *Purpose of the Payments*

The government contends that I.R.C. § 105(c)(1), which requires payments to be made "for the permanent loss or loss of use of a member or function ...," has not been satisfied. The government argues that since the employment contract between Rosen and WCI did not require that an injury or disability have any permanency for entitlement to vest, these payments were not made "for" a permanent injury. Under the government's interpretation, since the contractual criteria did not require any permanent loss, but merely an inability to perform for whatever reason, the contract fails to meet the conditions established by this section. It stretches the language of section 105(c)(1) too far to insist that the employment agreement provide for payment "for a permanent injury", but not "for" inability to perform where the inability is caused by permanent injury, the permanency of the injury being conceded here. The absence of the word "permanent" in Section 5 of the agreement is not dispositive of the question of the taxability of these payments.

■ Whether the stated terms of the disability plan expressly provide for compensation of "permanent" disability is not dispositive of this question. Rather, one must look to the actual disability suffered and whether it is permanent as a medical fact to determine whether the payment is for a permanent loss. *See Watts v. United States,* 703 F.2d 346 (9th Cir.1983); *Wood v. United States,* 590 F.2d 321 (9th Cir. 1979); *Masterson v. United States,* 478 F.Supp. 454 (N.D.Ill.1979); *Hines v. Commissioner,* 72 T.C. 715 (1979). As indicated in the above cases, plans may serve a dual purpose depending upon the reasons for which the employee is granted distribution. In order to be exempt under section 105(c)(1), the taxpayer must prove the existence of an accident or health plan, that he had invoked its provisions, and that the

benefits were computed on the basis of his disability.

It is not disputed that the employment agreement set up a "plan" under the conditions of section 105(e). Further, it is undisputed that the payments were made after WCI's insurance company determined that Rosen was permanently disabled. This was not a profit-sharing plan which was simply triggered by the circumstances of the plaintiff's disability. Rather the payments were a bargained for compensation for Rosen's disability. Therefore, the statutory language of section 105(c) has been satisfied. *See* IRS Action on Decision CC–1981–8 (*Masterson v. United States*) (Oct. 2, 1980) (the cause of the disability is looked to in determining permanency and not the terms of the underlying plan); *see also*, Rev.Rul. 63–181, 1963–2 C.B. 74, 75 (whether payments qualify under § 105(c) "depend upon all the facts and circumstances"). For these reasons, the case *Gibson v. United States*, 86–2 U.S.T.C. § 9606, 643 F.Supp. 181 (W.D.Tenn.1986), tendered by defendant, is distinguishable on its facts.

If Congress had intended the construction of I.R.C. § 105(c)(1) which the government urges in this case, it would have better expressed its intent by expressly requiring that the underlying disability plan, by its terms, provide for permanent disability in order to qualify. Rather, the statutory language focuses on the permanency of the disability actually incurred and not the terms of the underlying plan. This is consistent with Congress' intent to move away from determining the tax exemption by reference to numerous technical requirements of the underlying disability plans to a focus on the circumstances of the disability itself and the compensation for that disability. *See* H.R.Rep. No. 83–1337, 83rd Cong.2d. Sess., A. 33 (1954); S.Rep. No. 83–1622, 83rd Cong.2d. Sess. 185 (1954), U.S.Code Cong. & Admin.News 1954, pp. 4025, 4629; Comment, *Taxation of Employee Accident and Health Plans Before and Under the 1954 Code*, 64 Yale L.J. 222 (1954).

Furthermore, whether WCI or its representatives intended the disability payments in its employment agreement with Rosen to be taxable does not determine whether they are or are not in fact taxable. Thus, the various attempts to demonstrate that the drafters of the agreement did not intend for the benefits under the disability provisions to be taxable is not relevant to the determination to be made in the instant case. In passing, this court notes that the parol evidence sought to be introduced by both sides appears only to indicate that there was some confusion or uncertainty on the part of the drafters regarding the taxable consequences of the agreement.

### B. *Nature of the Injury*

■ In order to be excludible from gross income, any disability payment must satisfy the condition of I.R.C. § 105(c)(2), which requires that payments be computed "with reference to the nature of the injury...." The government contends that a general payment plan that fails to set forth a disability-specific payment schedule in the plan specifications does not meet this second condition intended by Congress. In this regard the government suggests that *Hines v. Commissioner*, 72 T.C. 715 (1979), is dispositive. Indeed, the Tax Court does appear to have adopted the position the government advocates. In *Hines*, the Tax Court disallowed the exclusion of benefits received by an airline pilot who had become ineligible for flying due to a heart condition that was not currently debilitating. In passing, the Tax Court noted, however, that the payments were not computed with reference to the nature of the injury because they did not "vary according to the type of injury received and a pilot who has a heart attack is entitled to the same benefits as one who suffers a mental breakdown or loses a limb." *Hines, supra,* at 720. *See also Beisler v. Commissioner*, 49 T.C.M. 534 (1985), *aff'd*, 787 F.2d 1325 (9th Cir.1986), *reh'g granted*, 795 F.2d 887 (9th Cir.1986); *Maller v. Commissioner*, 49 T.C.M. 157 (1984).

In contrast, three federal courts have held disbursements under an employee's account in his employer's profit sharing fund due to the employee's disability to be tax exempt under section 105(c) without regard to whether the payment varied in amount based on the specific disability. *Wood v. United States,* 590 F.2d 321 (9th Cir.1979); *Berner v. United States,* 81–2 U.S.T.C. ¶ 9733 (W.D.Pa.1981); *Masterson v. United States,* 478 F.Supp. 454 (N.D.Ill. 1979). In each of these cases, the retirement proceeds would have been taxable but for the sole fact that retirement was by reason of permanent disability. In none of the cases did the proceeds vary based on the specific injury suffered.

These cases would appear to be in direct conflict with those of the Tax Court noted above, but the Ninth Circuit has ably distinguished these contradictory positions in a manner that is adopted by this court and is dispositive of this issue in the case at bar. In *Beisler,* the Ninth Circuit agreed that the Congressional purpose in adopting I.R.C. § 105(c) required that the benefits under a disability plan vary according to the type or severity of a person's injury in order to satisfy the nature of the injury requirement. The court distinguished *Wood, supra,* a case that is factually similiar to the instant case, by noting that:

> An employee who is totally and permanently disabled will always be at the top end of the severity scale and will therefore always be entitled to the maximum benefit. Because *Wood* was totally and permanently disabled, he was entitled to the highest amount of disability payments. Having received that amount, his benefits were calculated with regard to the severity of his injury. *See* Rev. Rul. 63–181, 1963–2 C.B. 74 (amounts received by a totally and permanently disabled employee are excludable from income under section 105(c)); Rev.Rul. 74–603, 1074–2 C.B. 35 (the amount received by the taxpayer in Rev.Rul. 63–181 was calculated with reference to the nature of his injury).

*Beisler v. Commissioner,* 1986–2 Stand. Fed.Tax Rep. (CCH) ¶ 9342, 83,724, 83,726 (footnote omitted).

Without deciding whether a schedule of injury payments requirement is a condition of section 105(c), this court will follow the decision in *Wood* and notes the reasoning in *Beisler,* and hold that, since Rosen was completely and permanently disabled and would be at the top end of any severity scale of benefits, his payments from WCI under the employment agreement were computed with reference to the nature of his injury.

### C. *Absence from Work*

■ The final condition precedent under I.R.C. § 105(c)(2) that must be satisfied before an amount may be excluded from a taxpayer's gross income is that a payment must be made "without regard to the period the employee is absent from work." The government argues that since the employment agreement between Rosen and WCI did not pay disability benefits until Rosen had been unable to perform his usual duties for a period of six consecutive months or a total of six months within a one year period, these benefits were paid with regard to the period Rosen was absent from work. In order to evaluate properly the taxability of Rosen's disability benefits under the employment agreement with WCI, it is important to look at the entire legislative scheme enacted in section 105 of the Code.

It is apparent that benefits under section 105(c) are to be contrasted with those allowed under section 105(d), which strictly limits the exclusion from gross income of sums received under a wage continuation plan. As evidenced by the comments of Senator Morse, this scheme was enacted to prevent high salaried corporate executives from drawing the amounts of their regular salaries as tax exempt disability benefits from special plans while on extended vacations taken on "doctor's orders." Floor Comments of Sen. Morse, H.R. 8300, Cong. Rec. (June 30, 1954) at 9323. The legislative history also makes clear that Congress

was concerned that disability benefits only be payable to workers on account of real illnesses. *Id.*

The terms of the employment agreement between Rosen and WCI would, at first glance, appear to fall exactly within the parameters of a wage continuation plan as described in section 105. If Rosen were to become ill or unable to work for a period of time he would continue under his full salary until such time as he was able to return, although if WCI chose not to reemploy Rosen at full salary, his benefits would extend without regard to any mitigating employment that he might embark upon. However, further analysis of the plan shows that where Rosen's injuries are permanent and total, his factual circumstances create a benefit that is not computed with regard to the period the employee is absent from work. Since there is no possibility that Rosen will return to work, it follows that his benefits are computed "without regard to the period" Rosen was absent from work. Moreover, the concerns of Congress that employees not be on sick leave vacations is clearly inapplicable to the case at bar. Thus, Rosen's benefits meet the third and final requirement of section 105, that the benefits not be computed with regard to the period of Rosen's absence from work.

As for the six month waiting period before benefits are payable, that is a standard provision of disability benefits that is also designed to ensure that individuals are in fact permanently disabled before benefits accrue. This creates an initial start-up date that is related to the employee's absence from work, but the operation of this provision does not mean that benefits are computed with regard to the period of absence from work.

*Conclusion*

 For the reasons set forth above, it is the decision of this court that the payments at issue satisfy I.R.C. § 105 and are properly excludable as gross income under the provisions of that section.

An appropriate Order shall this day issue.

ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

ADJUDGED AND ORDERED

that:

1. Defendant's motion for summary judgment shall be, and it hereby is, denied.

2. Plaintiffs' motion for summary judgment shall be, and it hereby is, affirmed.

3. Defendant, the United States of America, shall be, and it hereby is, directed to pay plaintiffs the sum of $188,976.00, together with interest as provided by law.

4. This case shall be, and it hereby is, dismissed and stricken from the docket of this court.