Randall L. BEISLER and Judith K. Beisler, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 85–7222.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted En Banc Sept. 16, 1986.

Decided April 9, 1987.

Robert V. Atmore and Deborah M. Regan, Minneapolis, Minn., for petitioners-appellants.

Ann Belanger Durney, Washington, D.C., for respondent-appellee.

James R. Ritchie, San Francisco, Cal., for amicus curiae, National Football League Players' Association.

Before SNEED, KENNEDY, HUG, FLETCHER, ALARCON, NELSON, BEEZER, HALL, WIGGINS, BRUNETTI, and NOONAN, Circuit Judges.

WIGGINS, Circuit Judge:

Randall and Judith Beisler appealed from a Tax Court decision holding that payments Mr. Beisler received from the Bert Bell National Football League Player Retirement Plan (NFL Plan) are not excludable from gross income under 26 U.S.C. § 105(c). A panel of this court affirmed. 787 F.2d 1325 (9th Cir.1986). Because of the importance of the issue decided, and the tension between the panel's decision and another opinion of this court, the case was reheard en banc. We conclude that the panel acted correctly and now affirm.

## I.

Mr. Beisler played professional football from 1966 through 1975. In 1975, he injured his neck in an NFL game while playing for the Kansas City Chiefs. The injury caused him to lose 60 to 79 percent of the use of his neck. Mr. Beisler's physicians advised him to stop playing professional football and to avoid professions requiring strenuous labor.

After the injury, Mr. Beisler applied for a "line-of-duty disability benefit" under the NFL Plan. His application was approved, and in 1979 he received a total of $47,475 in payments from the plan. The Beislers reported $10,552 of this as income for 1979.

Contributions to the NFL Plan are made entirely by the member clubs of the NFL, including the Kansas City Chiefs. Under the NFL Plan, a player may receive, for up

to sixty months, a monthly line-of-duty disability benefit if he incurs a "substantial disablement" during any regular NFL game. The NFL Plan defines "substantial disablement" as a permanent disability resulting in the loss, to varying degrees, of various bodily functions.[1] A monthly line-of-duty disability payment consists of the player's accumulated "benefit credits." A player earns a specified benefit credit for each credited football season he plays. From 1966 through 1975, a player earned benefit credits ranging from $65 to $110 per season.[2]

Thus, entitlement to disability payment requires a threshold diagnosis of a substantial, permanent injury as defined by the NFL Plan. Once this threshold is reached, the amount of payment is determined solely by the number of professional football seasons for which the player is given credit. The amount of the payment does not vary according to the nature of the injury. However, payments under the NFL Plan are reduced to some extent by benefits the player receives under applicable workers' compensation statutes.

## II.

■ Generally, amounts an employee receives through an accident or health insurance plan are included in the employee's gross income if those amounts "(1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer." 26 U.S.C. § 105(a). However, a taxpayer may exclude from gross income amounts normally includable under

section 105(a) if those amounts satisfy the requirements of 26 U.S.C. § 105(c).

To exclude benefits from income under section 105(c), the taxpayer must first prove that the amount received was paid through an accident or health insurance plan. *See Caplin v. United States*, 718 F.2d 544, 547 (2d Cir.1983); *Wood v. United States*, 590 F.2d 321, 323 (9th Cir.1979); *see also* Treas.Reg. § 1.105–5(a) (1964). The taxpayer must next prove that the amount "constitute[s] payment for the permanent loss or loss of use of a member or function of the body, or permanent disfigurement, of the taxpayer." 26 U.S.C. § 105(c)(1). *See generally Watts v. United States*, 703 F.2d 346, 350–53 (9th Cir.1983). Finally, the taxpayer must demonstrate that the amount is "computed with reference to the nature of the injury without regard to the period the employee is absent from work." 26 U.S.C. § 105(c)(2).

The Commissioner determined a deficiency in the Beislers' income taxes for 1979 based on inclusion in their gross income of the entire amount of disability benefits Mr. Beisler received from the NFL Plan. The government in the Tax Court did not dispute that the amount Mr. Beisler received from the NFL Plan was paid through an accident or health insurance plan. Rather it argued that Mr. Beisler's injury was not a permanent loss of bodily function within the meaning of section 105(c)(1), that the amount received was not computed with reference to the nature of the injury as required by section 105(c)(2), and that the amount received was based on Mr. Beisler's absence from work, as proscribed by

---

1. The NFL Plan defines "substantial disablement" as follows:

A "substantial disablement" is a permanent disability which:
A) Results in a partial bodily disability of 50%, or more, or the loss of 50% or more of speech or sight; or 50% or more loss of use of the neck or back; or
B) Results in 60% or more loss of use of the hearing or an arm, shoulder, leg or hip; or
C) Results in 80% or more loss of use of a hand, wrist, elbow, foot, ankle or knee; or
D) Is the primary or contributory cause of the surgical removal or major functional impairment of a vital bodily organ or part of the central nervous system.

A disability shall be deemed to be permanent if it has or is expected to persist for a [sic] least twelve months from the date of its occurrence and has resulted in the Player's retirement from professional football.

Bert Bell NFL Player Retirement Plan § 6.4.

2. For purposes of illustration, the NFL Plan specified the benefit credits for the 1971 and 1972 seasons as $105 and $110 respectively. A player who played only in those years and became "substantially disabled" in 1972 would receive monthly payments of $215 until the end of the sixty-month period or until he was no longer disabled, whichever came first.

section 105(c)(2). The Tax Court ruled for the government on the latter two issues and denied the Beislers' exclusion of the benefit payments. 54 T.C.M. (P–H) ¶ 85,-025 (1985). The Beislers appealed to this court under 26 U.S.C. § 7482.

The Beislers argue that the Tax Court erroneously applied section 105(c)(2), both with regard to its nature-of-the-injury requirement and to its absence-from-work prohibition. The government contends the Tax Court correctly applied section 105(c)(2) and, in the alternative, that Mr. Beisler's injury is not a permanent loss permitting exclusion under section 105(c)(1).

■ We conclude that benefit payments, to be excludable from gross income under section 105(c), must be made under a plan that varies benefits according to the type and severity of the injury incurred. Because the NFL Plan fails to do this, Mr. Beisler's benefit payments are not excludable. We therefore offer no opinion as to whether (1) the NFL Plan qualifies as an accident or health insurance plan under section 105(e); (2) Mr. Beisler suffered a permanent loss of bodily function as required by section 105(c)(1); (3) the NFL Plan computed benefit payments with regard to employees' absence from work, as proscribed by section 105(c)(2); or (4) section 105(c)(2) disallows exclusion of payments based in any part on past services.

### III.

■ To be excludable from gross income, amounts paid to employees under accident or health insurance plans must be "computed with reference to the nature of the injury without regard to the period the employee is absent from work." 26 U.S.C. § 105(c)(2). The Tax Court, relying on its decision in *Hines v. Commissioner,* 72 T.C. 715, 720 (1979), held that benefits satisfy the nature-of-the-injury requirement only if they vary according to the type of the injury incurred. The Tax Court's holding that Mr. Beisler's benefit payments constituted income for federal tax purposes resolved a question of law, *see First Charter Fin. Corp. v. United States,* 669 F.2d 1342,

1345 (9th Cir.1982), which we review de novo. *Vukasovich, Inc. v. Commissioner,* 790 F.2d 1409, 1413 (9th Cir.1986).

The Beislers dispute the Tax Court's interpretation of the nature-of-the-injury requirement. They first contend that section 105(c)(2) does not require plans to relate benefits to the nature of the injury, but merely prohibits basing benefit payments on the employee's absence from work.

■ We reject the Beislers' interpretation of section 105(c)(2). The section's language—"computed with reference to the nature of the injury without regard to the period the employee is absent from work"—contemplates more than a prohibition against exclusion of payments based upon absence from work. The Beislers' reading of section 105(c)(2) would make the nature-of-the-injury language surplusage. We should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress. *Co Petro Mktg. Group, Inc. v. Commodity Futures Trading Comm'n,* 680 F.2d 566, 569–70 (9th Cir. 1982).

Moreover, legislative history militates against such a narrow reading of section 105(c)(2). Both the Senate Finance Committee Report and the House Conference Report accompanying the 1954 Revenue Act recognized the distinctness of the nature-of-the-injury and the absence-from-work inquiries: "Subsection (c) provides that amounts described in subsection (a) shall not be included in gross income if ... the payments are computed with reference to the nature of the injury *and* without regard to the period the employee is absent from work." S.Rep. No. 1622, 83d Cong., 2d Sess. 183–84, *reprinted in* 1954 U.S. Code Cong. & Admin.News 4621, 4818 (emphasis added); *accord* H.R.Conf.Rep. No. 2543, 83d Cong., 2d Sess. 25, *reprinted in* 1954 U.S.Code Cong. & Admin.News 5280, 5284.

We are left, then, to determine what Congress intended when it required benefit amounts to be "computed with reference to the nature of the injury." We believe the

legislative purpose underlying section 105 provides the best available answer. Section 105(a) establishes the general rule that amounts received from employer-funded health and accident plans are includable in the employee's gross income. Section 105(c) creates an exception to this general rule, excluding from gross income certain payments under accident and health plans that do not resemble income, while including those that do. Section 105(c)(2) is a mechanism for accomplishing this purpose. It excludes from gross income only those amounts of accident and health insurance payments that are computed with reference to the nature of the taxpayer's injury. Only these payments are compensation for "the permanent loss or loss of use of a member or function of the body, or permanent disfigurement," and as such do not resemble income. On the other hand, section 105(c)(2) includes in income amounts that vary according to the amount of time an employee is absent from work. These amounts resemble income in that they tend to compensate a person for lost wages.

To accomplish the congressional purpose of excluding only those payments that compensate for permanent losses of bodily function, the nature-of-the-injury requirement is best read to require that benefits vary according to the type and severity of a person's injury. Only then are the payments and the injury sufficiently related to reflect the compensatory purpose required by section 105(c). Other decisions in addition to *Hines* have likewise interpreted section 105(c)(2) to permit exclusion of payments only under plans that vary benefits to reflect the particular loss of bodily function. *See Gibson v. United States,* 643 F.Supp. 181, 185–86 (W.D.Tenn.1986); *Christensen v. United States,* 57 A.F.T. R.2d (P–H) 86–996, at 86–997 to –998 (D.Minn.1986) [Available on WESTLAW, DCTU database]; *In re Maller,* 53 T.C.M. (P–H) ¶ 84,614, at 84–2497 (1984); *cf. Caplin v. United States,* 718 F.2d at 549 (computing benefits solely on basis of service

and not on basis of disability fails to satisfy section 105(c)(2)). We therefore hold that amounts received as accident or health insurance benefits may be excluded from gross income under section 105(c) only if paid by a plan that varies the amount of payment according to the type and severity of the injury suffered by the employee.

The Beislers contend that our holding today contravenes our earlier decision in *Wood v. United States,* 590 F.2d 321 (9th Cir.1979). *Wood* involved the excludability of payments to a retired employee under what the government conceded was a "dual purpose" (pension/disability) plan. We held that if an employee is entitled to the same benefits under both a pension and a section 105(c) plan, then the benefit payments qualify as payments " 'for' the permanent loss of bodily function" under section 105(c)(1). 590 F.2d at 323. The Beislers argue that *Wood* implicitly rejected the requirement that benefit payments vary with the type and severity of the injury, because in *Wood* the benefits were excluded from the taxpayer's income even though the benefit plan made no provision to relate the amount of benefit to the type or severity of the injury.

We do not share the Beislers' view on the controlling nature of *Wood* over section 105(c)(2). *Wood* focused exclusively on section 105(c)(1)'s requirement that a payment be for the permanent loss of a bodily function. The *Wood* court itself recognized that it was not addressing the entire body of section 105(c) law. *See* 590 F.2d at 323 (court assumes for purposes of litigation that plan qualifies as accident or health plan). Although the court recited section 105(c)(2), 590 F.2d at 323, it evidently assumed, without explanation, that its requirements were met. "Such unstated assumptions on non-litigated issues are not precedential holdings binding future decisions." *Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285, 1288 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986).[3]

---

**3.** Nor is Rev.Rul. 63–181, 1963–2 C.B. 74, as interpreted by Rev.Rul. 74–603, 1974–2 C.B. 35, inconsistent with this opinion. The accident

and health plan in Rev.Rul. 63–181 provided a lump-sum payment only in the event of death or permanent and *total* disability. Requiring a

## IV.

■ We turn now to consideration of the facts of this case. Mr. Beisler's benefit payments necessarily fail to qualify for exclusion under section 105(c)(2). Rather than computing benefit amounts with reference to the type and severity of the injury, the NFL Plan, upon a showing of substantial disablement, determines them solely on the basis of the number of seasons played. The fact that the NFL Plan compensates only the most severe permanent injuries (those subsumed under the term "substantial disablement") does not cure this section 105(c)(2) defect. As the Tax Court noted, under the NFL Plan all players who sustain career-ending injuries and whose football careers span the same period receive the same line-of-duty disability payment, regardless of the type of injury suffered. The plan makes no attempt to distinguish among the various "substantial disablements," even though the types and severity of these injuries can vary greatly. The NFL Plan thus does not compute the amount of its disability payments with reference to the nature of the injury.

■ The Beislers argue that the NFL Plan does compute payments with reference to the nature of the injury because the plan reduces certain benefits for injuries compensable by workers' compensation. Workers' compensation statutes vary their benefits based on the degree of permanent loss of bodily function.[4] Because benefits under the NFL Plan are in certain instances reduced to reflect workers' compensation awards, often benefit payments under the NFL Plan do vary with the severity of the injury. Unfortunately, this argument only hurts the Beislers' cause. Any variance in payment would be in *inverse* proportion to the severity of the injury. Clearly Congress, by requiring that payments be computed with reference to the nature of

the injury, did not intend that lesser injuries be given greater compensation.

## V.

The NFL Plan did not compute benefit amounts with reference to the type and severity of the injury, as required by 26 U.S.C. § 105(c)(2). The Tax Court was therefore correct in denying the Beislers' exclusion of the payments. AFFIRMED.

NOONAN, Circuit Judge, with whom HUG, FLETCHER, and NELSON, Circuit Judges, join dissenting:

The position taken by the Commissioner in this case would make sense if the statute provided that the amounts paid were to be computed "only with reference to the nature of the injury." The helpful word "only" is not present in the statute. The Commissioner has no power to add it.

This court is equally without power to subtract language from the statute or to substitute its own language for that of the statute. The court's opinion is correct if the statute read that the payments are excludable "if computed only in proportion to the severity of the injury and without regard to the number of years of service." That statute is not the statute in the Internal Revenue Code.

The actual statute excludes the NFL Plan's payments to Beisler if the payments have been "computed with reference to the nature of the injury without regard to the period the employee is absent from work." I.R.C. § 105(c)(2). The plan's payments are computed exactly the way the statute prescribes. If a player suffers an injury depriving him of 50% or more of the use of his speech, sight, neck, or back, he receives payments. If he suffers an injury depriving him of 60% or more of the use of his hearing, arm, shoulder, leg, or hip, he re-

variance among amounts paid for loss of various bodily functions in that case would be meaningless, because the plan covered only one such loss besides death—permanent and total disability.

**4.** Workers' compensation statutes typically provide compensation for permanent loss of bodily function through schedules, which factor in the

employee's salary level, the type of the loss (e.g., hand, foot, etc.), and the severity of the loss of use (e.g., 20%, total, etc.). *See generally* 2 A. Larson, *The Law of Workmen's Compensation* § 58 (1986); Bureau of Labor Standards, U.S. Dep't of Labor, *Summary of State Workmen's Compensation Laws* (1970).

ceives payments. If he suffers an injury depriving him of 80% of the use of a hand, wrist, elbow, foot, ankle, or knee, he receives payments. NFL Plan 6.4. It is, of course, possible to characterize this schedule, which links the nature of the injury to compensation, as "a threshold requirement." The opinion of the court takes this not implausible course. But it is difficult to see why the court should go out of its way to impose such a description on a plan that, almost as clearly as language permits, relates the specific nature of the injuries to the payment of benefits.

What more could the plan do? It could and did provide that the payments would be reduced where there were workers' compensation payments made to the injured player. As the opinion of the court observes, workers' compensation statutes normally vary their benefits based on the degree of loss of bodily functions. *E.g.,* "Schedule for Rating Permanent Disability," *Workers' Compensation Laws of California,* ed. Hanna, 1985, p. 6–7. Because of this provision in the plan—again the opinion makes the point—payments under the plan will and do vary with the nature of the injury. NFL Plan 6.3. On this score alone, payments under the plan fit exactly within the statutory language.

The opinion maintains that variation in payments in inverse proportion to the severity of the injury "hurts the Beislers' cause." Why? The statute says nothing about "severity of the injury" or "inverse proportion." The statute in so many words excludes what is computed with reference to the nature of the injury.

Without statutory language to support its result, the court attributes a purpose to Congress for which there is no evidence in the legislative history. The exclusion, now incorporated in Section 104(c), goes back to the Revenue Act of 1918, Section 213(b)(vi), which excluded "amounts received, through accident or health insurance or under workmen's compensation acts, or compensation for personal injuries or sickness ..." As enlightened plans expanded the arrangements under which such "compensation for personal injuries" might be

made, Congress acted to enlarge the exclusion. Section 104(c) was added by the Senate to the Internal Revenue Code of 1954 and accepted by the House, Conference Report, H.R. No. 2543, 83th Cong., 2nd Sess. (1954), *U.S. Code Cong. & Ad.News* 3, 5284 (1954). The Senate Finance Committee, in making the change that was accepted, declared: "In addition, your committee's bill makes it clear that certain payments for injury if made without regard to the employee's absence from work are to be exempt. These are payments for the permanent loss (or loss of use) of a member, or function, of the body or for permanent disfigurement." Senate Finance Committee, Report, *U.S. Code Cong. & Ad.News* 3, 4645 (1954). Nothing in this history suggests a desire to tax the kind of payments made to Beisler.

Nor, it appears, would the taxability of such payments be a commonsensical understanding of the purpose of the statute. Why should Congress care whether the payments are in inverse proportion or not? What Congress had in mind was that the payments being received should not be anything like ordinary income. The excluded income, just like workers' compensation for permanent injury, is compensation for the permanent loss of part of a person's body, not substitute wages. The way Congress chose to make this distinction was to focus on payments computed "with reference to the nature of the injury." Workers' compensation "as compensation for personal injuries" is excluded from income. I.R.C. § 104(a)(1). So should be the payments here. That the NFL Plan is calibrated so nicely as to fit in with workers' compensation statutes giving benefits for bodily injury is proof that what Congress sought to exclude from income is being paid by the plan.

The opinion says that Section 105(c) is meant to exclude health plan payments that "do not resemble income." The opinion is unquestionably right. Under the statute, gross income means "compensation for services", etc. I.R.C. § 61(a). Does money paid a football player because he has lost an eye, suffered a loss of hearing, or broken his neck resemble "compen-

sation for services"? A great national sport has not reached the point where the NFL's efforts to offer some redress for permanent loss of parts of a person's body should be characterized, even by implication, as "compensation for services."

I would reverse.