**John F. PAUL and Anne P. Paul, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 86–74911.**

United States District Court, E.D. of Michigan, S.D.

Jan. 6, 1988.

William Thompson, Southfield, Mich., for plaintiffs.

David Grossman, Trial Atty., Tax Div. Dept. of Justice, Washington, D.C., Elizabeth Larin, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

This is a tax refund action for $13,910.18. At all times relevant to this action, Plaintiff John F. Paul, was an employee of Anchor Bay Clinic, P.C. and was a participant in its Profit Sharing Plan and Trust. In December of 1979, John F. Paul was diagnosed as having Alzheimer's Disease. Subsequently, on December 19, 1979, he ceased all work as an employee of Anchor Bay Clinic, P.C. and later, on October 22, 1986, John F. Paul died. During the taxable year 1981, the trustee of the Anchor Bay Clinic, P.C. Profit Sharing Plan and Trust distributed to John F. Paul the value of his account in the Plan, resulting in a total distribution of $60,439.00. Plaintiffs' 1981 federal income tax return did not report the distribution of $60,439 as income. On December 7, 1983, the Internal Revenue Service issued a statutory notice of deficiency to Plaintiffs stating that the distribution made by the An-

chor Bay Clinic, P.C. should have been included in their income for the 1981 taxable year. Thereafter, Plaintiffs filed an amended income tax return, reporting the distribution as income, and averaging the amount over a ten year period. The amended return reported a total tax due in the amount of $9,934.00. Plaintiffs paid the amount due and also subsequently paid the interest due on the additional tax. The interest due was $3,976.18. Plaintiffs thus paid a total of $13,910.18 in additional taxes for the year 1981. On December 17, 1985, Plaintiffs filed a second amended tax return claiming that they overpaid their 1981 federal income taxes and sought a refund of the overpayment. The Internal Revenue Service notified Plaintiffs on February 24, 1986 that their claim for a refund was denied and Plaintiffs commenced this refund action.

The matter is presently before the court on the parties cross motions for summary judgment. The issue presented by the motions is whether the distribution received by Plaintiffs in the taxable year 1981 is excludable from their gross income pursuant to the provisions of 26 U.S.C. § 105(c) and (e). Before addressing the arguments of the parties, the Court considers it appropriate to set forth the principles which must guide its decision whether to grant summary judgment. Rule 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The party moving for summary judgment "bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor." *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976); *See also United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In ruling on a motion for summary judgment, the district court must view the evidence, and all reasonable inferences to be drawn

therefrom, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Potters Medical Center v. The City Hospital Ass'n.*, 800 F.2d 568 (6th Cir. 1986).

The arguments of the parties focus on the provision of the Internal Revenue Code of 1954 which relates to amounts received under accident and health plans. 26 U.S.C. § 105. Section 105(a) states that, "except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income...." Subsection (c) of § 105 sets forth one of the exceptions to the general rule of subsection (a). Section 105(c) provides:

> Gross income does not include amounts referred to in subsection (a) to the extent such amounts—
>
> 1) constitute payment for the permanent loss of use of a member or function of the body, ..., and
>
> 2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

For purposes of Section 105, "amounts received under an accident or health plan for employees ... shall be treated as amounts received through accident or health insurance." 26 U.S.C. § 105(e). The parties apparently agree that in order for a taxpayer to exclude payments from gross income under § 105(c), the payments must 1) be made pursuant to a health or accident plan; 2) must be for the permanent loss of use of a member or function of the body; and 3) must be made with reference to the nature of the injury or disability and without regard to the period the employee was absent from work. *See Beisler v. Commissioner*, 814 F.2d 1304.1306 (9th Cir. 1987).

Defendant contends that the profit sharing plan in this case does not qualify as an accident or health plan. Defendant recognizes that under some circumstances, a profit sharing plan may serve a dual purpose and also be an accident and health plan, but that under the circumstances presented herein, the profit sharing plan does not serve a dual purpose. Defendant asserts that the profit sharing plan does not qualify as a health plan for two basic reasons. First, the profit sharing plan does not contain any language indicating that its purpose was to provide compensation for specific injuries or losses. Second, the profit sharing plan does not allocate or vary the amount paid according to the nature of the injury since after a determination of complete and total disability, the trustee of the plan is obligated to distribute to the employee "the then value of his account." See P. 6.3 of the plan. Additionally, Defendant contends that the distribution made by Anchor Bay Clinic was not computed with reference to the nature of Plaintiff's injury and without regard to the period he was absent from work. Defendant asserts that payments made with reference to the injury are intended to compensate the injured person for the loss or loss of use of a body part or function and that the payment made to Plaintiff was not meant to compensate him for the loss or loss of use of any body part. *See Beisler v. Commissioner*, 814 F.2d at 1308. When the benefits vary according to the type and severity of the person's injury, the payments reflect the compensatory purpose of § 105(c) and thus do not resemble income. *Id.* Defendant asserts that the determination that plaintiff was permanently disabled triggered the distribution in this case but that the amount of the distribution was dependent only upon the amount of previous employer contributions to the plan and was not dependent on the nature of the injury.

On the other hand, Plaintiffs contend that the profit sharing plan is indeed a dual purpose plan which would qualify as an accident and health plan. Plaintiff asserts that the Anchor Bay Clinic plan is a health and accident plan for two reasons. First, the clinic had no other plan that provided employees with disability benefits. Second, the preamble of the plan states that its purpose was to assure employees that "they will share in the prosperity of the

business, and to provide for accumulation of funds for their retirement and financial emergencies." Plaintiffs apparently contend that the language relating to "financial emergencies" encompasses losses due to accidents or sickness. Plaintiffs also contend that the amount distributed to John F. Paul constituted payment for the permanent loss of use of a function of the body and that such amount was computed with reference to the nature of his injury without regard to the period in which he was absent from work.

The Court is persuaded that there is no evidence from which the Court can conclude that the Anchor Bay Clinic, P.C. profit sharing plan and trust qualifies as an accident and health plan. In as much as the first prong of the three part test for the exclusion of payments from gross income under § 105(c) is dispositive of the motion for summary judgment, the Court will not address the remaining two prongs of the test.

The profit sharing plan in this case is lacking in language indicative of a dual purpose accident and health plan. The Second Circuit set forth the sort of language that might be included in a dual purpose plan as follows:

> Ordinarily, a definite program to provide accident or health coverage will be accompanied by certain indicia reflecting the plan's purpose. Thus, for example, such a plan, if written, could state that its purpose is to qualify as an accident or health plan within the meaning of the Internal Revenue Code of 1954, as amended, and that the benefits payable under it are eligible for income tax exclusion. Ordinarily, it is specified that the benefits payable under an accident or health plan are those amounts incurred for medical care in the event of sickness. It could also specify that the benefits payable be limited to those amounts incurred for medical care in the event of personal injury or sickness, and provide for the specific reimbursement of such expenses. Further, a plan might allow an employee to be compensated for specific injuries or illnesses, such as the loss of use of an arm or leg. While these and other like provisions are not prerequisites to the existence of an accident or health plan, their absence plainly militates against a finding that a profit sharing plan serves a dual purpose.

*Caplin v. United States,* 718 F.2d 544,549 (2nd Cir.1983). As in *Caplin,* the profit sharing plan in the instant case does not contain any of the indicia of a dual purpose. While such language is not required, its inclusion in the plan would support Plaintiff's position.

The Court rejects Plaintiffs' contention that language referring to "financial emergencies" brings the plan within the parameters of a health and accident plan. The language by itself does not connote any sort of health related or injury related compensation. Also, when read in conjunction with the entire preamble to the plan, the purpose of the profit sharing plan is clear. The preamble states in part:

> Whereas, the Employer wishes to share a portion of its profits with its employees to promote in them the strongest interest in the successful operation of the business and increased efficiency in their work, to assure them that they will share in the prosperity of the business, and to provide an opportunity for accumulation of funds for their retirement and financial emergencies;

Thus, the motivation for the profit sharing plan was to ensure prosperity in the business as well as to ensure prosperity of the employees. The purpose was strictly financial and no mention of providing for the health and welfare of the employees was made when discussing the purposes of the plan.

It is undisputed that $60,439 was distributed to Plaintiffs after a determination was made that John F. Paul was permanently and totally disabled. However, this fact alone does not convert the profit sharing plan to an accident and health plan. Under the terms of the plan in the instant case, Plaintiff's disability merely triggered the vesting of the amount due to him under the profit sharing plan. Plaintiff relies on numerous cases which find that a lump sum

payment to a disabled individual under a profit sharing plan qualifies for the income tax exception under § 105(c). See e.g., *Rosen v. United States*, 646 F.Supp. 97 (W.D. Va.1986); *Wood v. United States*, 590 F.2d 321 (9th Cir.1979); *Masterson v. United States*, 478 F.Supp. 454 (N.D.Ill.1979). However, in each of the cited cases, there was no dispute as to whether the plan in question qualified as a dual purpose plan. In fact, the *Rosen* court stated:

> It is not disputed that the employment agreement set up a "plan" under the conditions of section 105(e). Further, it is undisputed that the payments were made after [the] insurance company determined that [plaintiff] was permanently disabled. *This was not a profit-sharing plan which was simply triggered by the circumstances of the plaintiff's disability.* Rather the payments were a bargained for compensation for [plaintiff's] disability.

*Rosen*, 646 F.Supp. at 100. (emphasis added). In the instant case, there *is* a dispute as to whether the profit sharing plan also qualifies as a plan under the conditions of § 105(e). Additionally, all factors indicate that the profit sharing plan, in this case, was merely triggered by the determination of Plaintiff's disability and that the payments made under the plan were not bargained for as compensation for Plaintiff's disability. Thus, the profit sharing plan was not a dual purpose accident and health plan.

Finally, the court acknowledges Plaintiffs' attempts to show that the certified public accountants who were in charge of the Anchor Bay Clinic, P.C. account intended that the amounts distributed under the profit sharing plan would qualify for the exclusion from ordinary income under § 105(c). Plaintiff submitted two affidavits to the court from two different accountants who expressed the belief that the plan qualified under the exception in § 105(c). However, the opinions of the accountants as to the taxability of the distributions under the plan does not determine whether or not the distributions are in fact taxable. See, *Rosen v. United States*, 646 F.Supp. at 100 (attempts to demonstrate

that the drafters of the employment agreement did not intend for benefits under disability provisions to be taxable is not relevant to the determination of whether or not they are in fact taxable).

The Court concludes that, as a matter of law, the profit sharing plan of Anchor Bay Clinic, P.C. is not a plan which qualifies as an accident or health plan under § 105(e). Therefore, the amounts distributed under the plan to Plaintiffs are properly includible in their gross income. Accordingly, and for the above reasons, Defendant's motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED. Defendant shall submit an appropriate order.