T.C. Memo. 1996-52

UNITED STATES TAX COURT

THOMAS E. KING, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1161-94.                    Filed February 13, 1996.

<u>Steven C. Bublitz</u>, for petitioner.

<u>Robert J. Burbank</u>, for respondent.

MEMORANDUM OPINION

GOLDBERG, <u>Special Trial Judge</u>: This case was heard pursuant
to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  Respondent
determined a deficiency in petitioner's Federal income tax for
taxable year 1990 in the amount of $2,481.  After a concession by

_____

[1]     Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

petitioner,[2] the sole issue for decision is whether disability benefits received by petitioner are excludable from petitioner's gross income pursuant to section 105(c).

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits received into evidence are incorporated herein by this reference. Petitioner resided in St. Louis, Missouri, at the time the petition was filed in this case.

From 1978 until 1983, petitioner was employed as a police officer with the Village of East Alton Police Department. In or around January 1983, petitioner suffered a heart attack while sitting at his desk. Although he continued to work after the attack, petitioner was diagnosed with mitral valve prolapse and post myocardial infarction. During June 1983, while off duty, petitioner fractured his right ankle and foot, broke several ribs, broke an arm, and severed two fingers which were later re-attached.[3] Thereafter, petitioner was placed on disability retirement and began to receive benefits equal to 50 percent of his salary pursuant to the Illinois Pension Code, Ill. Rev. Stat. ch. 108 1/2, par. 3 et seq. (1991) (The Pension Code).[4]

---

[2] Petitioner concedes that he failed to report interest income of $20.

[3] The record is silent as to the cause of petitioner's injury.

[4] The paragraphs of the Illinois Revised Statutes 1991, as amended through P.A. 87-1280, were reallocated and renumbered in the Illinois Compiled Statutes 1992, authorized by P.A. 87-1005, effective Jan. 1, 1993. The statute at issue is now found in chapter 40, sec. 5/3-114.2 of the Illinois Compiled Statutes

The Pension Code provides for disability pensions for police officers regardless of whether the officer becomes disabled on or off duty. In particular, the Pension Code provides:

> Disability pension--Not on duty. A police officer who becomes disabled as a result of any cause other than the performance of an act of duty and who is found to be physically or mentally disabled so as to render necessary his or her suspension or retirement from police service in the police department, shall be entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement.
>
> If a police officer on disability pension dies while still disabled, the disability pension shall continue to be paid to the officer's survivors in the sequence provided in Section 3-112.
>
> From and after July 1, 1987, any pension payable under this Section shall be at least $400 per month, without regard to the fact that the disability or death of the police officer occurred prior to that date.

Ill. Rev. Stat. ch. 108 1/2, par. 3-114.2 (1991). In the event that an officer is disabled in the line of duty, the amount of the pension is increased to 65 percent of the officer's salary. Id. at 3-144.1. Furthermore, "If a police officer receiving pension payments re-enters active service, pension payments shall be suspended while he or she is in service. When he or she again retires, pension payments shall be resumed." Id. at 3-124.1.

Due to the nature of his injuries, petitioner was in a cast for approximately 1 year, and used crutches and canes for several years thereafter. He later refractured his ankle several times,

---

Annotated (Smith-Hurd 1993).

and may suffer from acute arthritis and a loss of mobility in the future. Moreover, petitioner testified that as a result of his heart attack, he suffers from low blood pressure, blurred vision, and fainting spells.

In 1988, petitioner was hired by Pinkerton's, Inc. on a full-time basis as a manager and training supervisor. Petitioner's work was sedentary in nature and did not require him to walk or stand for any length of time. During 1990, petitioner left Pinkerton's, Inc. to work for the Missouri Botanical Gardens (the Gardens) where he was hired on a full-time basis as a safety and security manager. Again, petitioner was able to fulfill the majority of his duties from his desk. On the rare occasions when he was required to patrol the grounds, the Gardens provided him with a golf cart. During the taxable year at issue, petitioner earned wages from Pinkerton's, Inc. and the Gardens totaling $28,380. He also received disability pension benefits from the Village of East Alton totaling $8,704. Petitioner did not report the benefits on his 1990 Federal income tax return.

On June 11, 1992, petitioner received a routine physical review for verification of the continuance of his disability, pursuant to paragraph 3-115 of the Pension Code. Ill. Rev. Stat. ch. 108 1/2, par. 3-115 (1991). In his report, Dr. Phillip George, the examining physician, observed that petitioner "was able to stand and walk about the room displaying no limp" and

that "he is not wearing any sort of supportive footwear or device on his left foot".  The report further states:

> He was able to stand on heels and toes on both sides.  He could hop independently on the left side.  He was able to do so on the right, but was unstable on that side.  Deep tendon reflexes were symmetrical and active at the knees and ankles bilaterally, and rated 2+. * * *  He had good pulses in both feet.  I could detect no sensory deficit in his lower extremities.  The right ankle demonstrated no deformity or soft tissue swelling.  Right ankle motion was slightly limited compared to the left. * * *

> *     *     *     *     *

> Diagnosis: Healed Fractures, Right Ankle and Os Calcis
>            Status Post Myocardial Infarction by History
>            Mitral Valve Prolapse, by History

Dr. Phillip concluded that petitioner "remained disabled from the performance of the expected [duties] of a policeman."

In the notice of deficiency, respondent determined that the pension benefits received by petitioner are taxable under section 105(a).  Petitioner contends that the pension benefits are excludable from gross income under section 105(c).  Respondent's determinations are presumed correct, and petitioner bears the burden of proving otherwise.  Rule 142(a).

Section 105(a) provides that amounts received by an employee under accident and health insurance plans funded by the employer generally are included in the employee's gross income.  However, section 105(c) provides an exception to the general rule:

> (c) Payments Unrelated to Absence From Work.--Gross income does not include amounts referred to in subsection (a) to the extent such amounts--

> (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * * and

> (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

Each prong of section 105(c) must be satisfied before payments are excluded. Beisler v. Commissioner, 814 F.2d 1304 (9th Cir. 1987) affg. en banc T.C. Memo. 1985-25.

Neither the statute nor the legislative history precisely describes the injuries that constitute permanent loss of a "function of the body". However, section 1.105-3, Income Tax Regs., provides examples of qualifying injuries:

> For purposes of section 105(c), loss or loss of use of a member or function of the body includes the loss or loss of use of an appendage of the body, the loss of an eye, the loss of substantially all of the vision of an eye, and the loss of substantially all of the hearing in one or both ears. * * *

Petitioner contends that he has lost the use of his right ankle and foot based on his inability to run, stand for long periods of time, walk up or down stairs without difficulty, or dance. Petitioner testified that his condition is degenerative with no hope of recovery, and, therefore, qualifies as a permanent loss of a function of the body. In the alternative, petitioner contends that his heart condition qualifies as a loss of a body function in that a valve in his heart is not functioning properly, thereby compromising his heart muscle. Petitioner's testimony appears to be in conflict with the 1992

report and diagnosis of Dr. George.  In any event, the type of limitations described by petitioner do not rise to the level of a "permanent loss or loss of use of a member or function of the body" under section 105(c).

In West v. Commissioner, T.C. Memo. 1992-617, the taxpayer fell off a scaffold and suffered a compression fracture of the thoracic spine which aggravated pre-existing injuries and resulted in two spine infusions, disc disease, multiple problems with his neck and back, and arthritis.  The taxpayer was a pipefitter and, after the fall, was unable to return to that type of work.  We held that the taxpayer's partial loss of the back function did not constitute the loss of a member or a bodily function within the terms of section 105(c).  We based our holding on the facts that the taxpayer was able to work in a less strenuous setting and the benefits received were based on the taxpayer's years of service, not the type or severity of his injury.

Likewise, in Hines v. Commissioner, 72 T.C. 715 (1979), we considered application of section 105(c) to a pilot who suffered a heart attack and lost the use of a portion of his heart.  We stated that "We do not think that the loss of the use of a portion of the muscle tissue of the heart constitutes the loss of a member or of a bodily function."  Id. at 719.  In response to the taxpayer's argument that payment for an injury which robs an

individual of his principal employment should qualify for the exclusion, we observed:

> the overall scheme of section 105(c) is aimed at providing tax relief to persons who suffer serious, permanent physical injury and receive compensation because of it. The fact that a person may have also lost wages or suffered a diminution of earning capacity * * * is irrelevant.

Id. at 720. In this case, petitioner's injury to his right ankle and foot does not satisfy the criteria of section 105(c)(1). Like the taxpayer in West v. Commissioner, supra, petitioner's partial loss of an ankle and a foot does not prevent him from working in other positions requiring less strenuous activity. Petitioner's employment by Pinkerton's, Inc. and the Gardens is proof of this fact. And petitioner's heart condition, like that of the pilot in Hines v. Commissioner, supra, and, as such, does not qualify as a permanent loss or loss of use of a member or function of the body under section 105(c)(1).

Furthermore, section 105(c)(2) requires that benefits paid under a health or accident plan be computed with regard to the nature of the injury. In Beisler v. Commissioner, supra, the disability payments made to a football player were determined by the number of years the retiree played football in the National Football League, and not the type and severity of the injury. In holding that the payments were not excludable under section 105(c)(2), the Court of Appeals for the Ninth Circuit stated:

> To accomplish the congressional purpose of excluding only those payments that compensate for permanent losses of bodily function, the nature-of-the-injury requirement is

> best read to require that benefits vary according to the type and severity of a person's injury. Only then are the payments and the injury sufficiently related to reflect the compensatory purpose required by section 105(c). * * *

Id. at 1308. In West v. Commissioner, supra, we similarly held that because the taxpayer's benefits were based on the number of his years of service as a pipefitter at the time of the accident, the payments were not based upon the type and severity of the injury as required by section 105(c)(2).

Petitioner argues that the benefits he received vary depending on whether his disability occurred on or off duty. He contends that this factor satisfies the criteria of section 105(c)(2). We disagree. Payments made under the Pension Code are expressly based on an officer's salary at the time of the injury. The distinction between where injuries occurring on and off duty does not meet the statutory requirement that the benefits be computed with reference to the type and severity of the injury in question. Petitioner would have received the same benefits regardless of the severity of the injury that led to his disablement as a police officer. Furthermore, if petitioner had been recalled to duty, benefits would have ceased. Therefore, petitioner's disability pension is not computed with reference to the nature of the injury and is affected by the period petitioner was absent from work. Because the exception under section 105(c) does not apply to petitioner's disability pension, the payments

must be included in petitioner's gross income.  Respondent's determination on this issue is sustained.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.