T.C. Memo. 1998-1

UNITED STATES TAX COURT

JOSE HERNANDEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6618-96.                          Filed January 5, 1998.

Jose Hernandez, pro se.

<u>Willis B. Douglas</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and 182.  Respondent determined a deficiency in petitioner's 1993 Federal income tax in the amount of $4,738.

_____

[1]  All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

After a concession by petitioner, the sole issue for decision is whether petitioner is entitled to exclude from gross income amounts received as disability payments during 1993.

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Costa Mesa, California.

Petitioner worked for the City of Santa Ana, California (the City), as a grounds maintenance worker, earning approximately $2,250 per month. The City provided petitioner with long-term disability insurance through Standard Insurance Co. of Portland, Oregon (Standard).

Standard offers two disability insurance options to the City's employees. Under plan A, a disabled employee is eligible to receive one-half of his base monthly salary until his disability ends or until he reaches age 65.[2] The City pays the entire premium for this coverage, but an employee is not eligible for the benefits until he is unable to work for 130 days because of the disability. Under plan B, a disabled employee receives

---

[2] Section 1 of Standard's group policy states:

> The amount of Monthly Income shall be 50% of the first $5,000 of the Member's basic monthly earnings, reduced by any Deductible Benefits.

the same benefits as above, with the exception that the waiting period is reduced from 130 days to 60 days. Enrollment in plan B requires the submission of a medical history statement and is subject to Standard's approval. The employee cost of plan B is approximately $5 per month; the City pays the rest. During all relevant times, petitioner was enrolled in plan A.

On October 15, 1985, while working for the City, petitioner tripped on an unrepaired crack in the sidewalk and struck his head on the pavement, sustaining permanent injuries to his head, back, and right eye. Nevertheless, petitioner returned to work with the City. In November 1988, as a result of these injuries, petitioner applied for disability benefits under plan A. Standard, however, rejected his claim.

In December 1988, petitioner applied to change his long-term disability insurance coverage from plan A to plan B. As requested by Standard, petitioner submitted a medical history statement. Standard denied petitioner's request, and petitioner remained covered under plan A.

On April 26, 1989, petitioner suffered another work-related accident. This time, petitioner, while trimming high tree branches, fell and suffered head, back, and neck injuries. As a result of the accident, he was unable to perform his regular duties for the City. After the accident, petitioner's work schedule was as follows: (1) From April 27 to May 2, 1989,

petitioner performed light-duty work; (2) from May 3, 1989, to January 15, 1990, petitioner did not perform any work for the City, as none was available that he could perform; (3) from January 16 to June 19, 1990, petitioner performed nonmaintenance "night-man" work; (4) on June 19, 1990, petitioner was instructed not to report to work, pending the investigation of an altercation, occurring on June 2, 1990, between him and several City security guards; and (5) on August 29, 1990, the City terminated petitioner's employment.

On November 17, 1990, petitioner filed a long-term disability claim with Standard, asserting that he had become totally and permanently disabled because of the two accidents described above. Soon after, Standard denied his claim. Petitioner pursued the issue during the 2 subsequent years but was unable to secure payment. It was not until petitioner elicited the assistance of the California State Insurance Commissioner's Office, in February 1993, that Standard agreed to honor petitioner's claim retroactively to September 9, 1989. Through a series of 12 checks, Standard paid petitioner the sum of $22,820.23 during 1993.

On the basis of information supplied to him by the City and Standard, petitioner believed that the benefits he had received were nontaxable. In accordance with this belief, petitioner did

not report the $22,820.23 on his 1993 Federal income tax return.[3]
In the notice of deficiency, respondent determined that
petitioner should have reported the above amount.

Petitioner's Year-to-Date Earning Reports for 1989 and 1990
(i.e., the City's employment records) show that no funds were
withheld from petitioner's wages to pay for the long-term
disability plan. Francisco Gutierrez, the City's administrative
service manager in charge of payroll functions, testified that
Standard's insurance premiums, to the extent paid by employees,
are typically paid through withholding and would be reflected on
those earning reports.

## Discussion

Respondent asserts that the distributions should be included
in petitioner's 1993 gross income because the City, not
petitioner, exclusively funded the long-term disability plan
under which petitioner benefited. Petitioner, on the other hand,
argues that the payments should be excluded from gross income
because he funded the disability plan through employee
withholdings and because he was advised that the payments were
not taxable.

---

[3] Petitioner prepares his tax returns on the cash method of
accounting.

Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 105(a) provides that amounts received by an employee under accident or health plans funded by the employer are included in the employee's gross income. Section 105(c), however, provides this exception to the general rule:

> SEC. 105(c). Payments Unrelated to Absence From Work.--Gross income does not include amounts referred to in subsection (a) to the extent such amounts--
>
> (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer * * * and
>
> (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work.

We hold that the distribution amounts are not excludable under section 105 from petitioner's 1993 gross income. Petitioner received the disability payments under a long-term disability plan (i.e., plan A) that was fully funded by the City. The record clearly demonstrates that no funds were withheld from petitioner's wages and that petitioner did not pay for the plan from other sources. Moreover, the section 105(c) exception does not apply. Petitioner did not establish that the payments were computed with reference to the nature of his injuries without regard to the period he was absent from work. Beisler v. Commissioner, 814 F.2d 1304, 1307-1308 (9th Cir. 1987), affg. en

banc T.C. Memo. 1985-25; <u>Hines v. Commissioner</u>, 72 T.C. 715, 720 (1979).  Accordingly, respondent's determination shall be sustained.

Petitioner argues that his 1993 Form W-2 indicates that the entire distribution is nontaxable sick pay.  We disagree.  Petitioner misunderstands the Form W-2, particularly box 13, which contains the terms "J 0.00".  Code J is explained as sick pay, and 0.00 indicates that no amount is to be applied for that category.  Thus, in our estimation, the Form W-2 indicates the opposite, that none of the distributions were for nontaxable sick pay and that the distributions are, in fact, taxable.

Petitioner also asserts that, assuming we find that the distributions are taxable, they should not be includable in his 1993 gross income because many payments pertain to years prior to 1993 during which petitioner was unable to work.  We disagree.  Petitioner, as a cash basis taxpayer, must include income during the taxable year it was actually or constructively received.  Sec. 451(a).  Since petitioner received $22,820.23 during 1993, that amount is income for that year.

To reflect the foregoing,

Decision will be entered

for respondent.
